UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FANDUEL, INC.,<br><br>                     Plaintiffs,<br><br>v.<br><br>CG TECHNOLOGY, L.P.,<br><br>                     Defendant. | Misc. Action No. __19-493__ |

## MEMORANDUM OF LAW IN SUPPORT OF FANDUEL'S MOTION TO ENFORCE ITS SUBPOENA

Defendant FanDuel, Inc. ("FanDuel") submits this Memorandum of Law in Support of its Motion to Compel Response to Subpoena against current non-party CG Technology, L.P. ("CG"). CG has produced documents and source code responsive to FanDuel's subpoena ("Subpoena"). **Ex. A**. However, CG has refused to execute a business records affidavit or to sit for a deposition to allow FanDuel to establish the admissibility of CG's documents and source code at trial. Given CG's refusal to do so, FanDuel respectfully moves this Court to compel CG's deposition, and would show the Court as follows.

## I.    INTRODUCTION AND BACKGROUND

### A.  *The Underlying Action*

Plaintiff in the Underlying Action, Interactive Games LLC ("IG"), filed a patent infringement lawsuit against FanDuel in the District of Nevada on April 8, 2016. **Ex. B**, *IG's Complaint for Patent Infringement*. Following the filing of a First Amended Complaint on June 13, 2016, IG had asserted a total of twelve patents against FanDuel—all but four of which have since been dismissed from the case. On July 28, 2017, the case was transferred to the District of Delaware. Shortly thereafter, the case was stayed pending resolution of *Inter Partes* Review

("IPR") proceedings FanDuel filed against each of the four remaining asserted patents. Through the IPRs, FanDuel successfully invalidated all the challenged claims of three of the asserted patents, and all but one dependent claim of the fourth asserted patent.

The now-invalid independent claim of the sole remaining asserted patent is directed to a method for determining first and second locations for a mobile gaming device and assigning corresponding game configurations to that device based on its determined location. **Ex. C**, U.S. Patent No. 8,771,058 at 60:2-28. Those game configurations then lead to corresponding game outcomes and payouts, which are then credited to the player's account. *Id*. More specifically, the asserted dependent claim is directed to determining the first game configuration by accessing a lookup table that contains an ordered list of locations and associated game configurations. *Id*. at 60:45-51.

Through discovery, FanDuel learned that CG[1] had developed a prior art system with a third party that FanDuel contends invalidates the asserted claim. Initially, FanDuel sought this information from IG because IG had previously represented to the District of Nevada that it, and certain Cantor affiliates, shared back office services pursuant to a shared services model, which includes both patent prosecution and commercialization services.[2] **Ex. F**, *Declaration of Glen Farbanish in Support of Plaintiffs' Opposition to Zynga's Motion to Sever*, at ¶¶ 7-8. However, IG

---

[1] The prior art system was actually developed by a distinct Cantor affiliate, Cantor G&W (Nevada), L.P. However, CG is the successor of Cantor G&W (Nevada), L.P. and the entity that now has the documents relating to CG's gaming business.

[2] Since that time, the relationship between IG and CG has blurred even further—one of the attorneys representing CG, David Paul, was also the client and corporate designee for IG, and IG appears to have provided CG with information for the purpose of objecting to FanDuel's requests. **Ex. D**, *8/13/19 Email from S. Allen to C. Brazen*, **Ex. E**, *09/20/19 Email from C. Bader to S. Springer*.

refused to produce the requested documents, and FanDuel was forced to serve the Subpoena[3] on CG. **Ex. A**.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide for broad discovery—parties are entitled to discover any non-privileged matter relevant to any party's claim or defense in proportion to the needs of the case. Fed. R. Civ. P. 26(b)(1). To that end, when a discovery request is not answered, the requesting party may move to compel and answer. *See* Fed. R. Civ. P. 37(a), 45(d). A party objecting to the imposition of undue burden resulting from a subpoena must establish that "compliance with the subpoena would be unreasonable and oppressive." *In re Subpoenas to Plains All Am. Pipeline, L.P.*, No. 1:11-CV-03543-WHP, 2014 WL 204447, at *3 (S.D. Tex. Jan. 17, 2014); *see also State Farm Mut. Auto. Ins. Co. v. Grafman*, No. 04CV2609NGSMG, 2016 WL 6126309, at *1 (E.D.N.Y. Oct. 20, 2016) ("The party resisting discovery bears the burden of showing why discovery should be denied.").

## III.    ARGUMENT AND AUTHORITIES

### A.    *This Court has Jurisdiction to Hear this Motion*

Under Federal Rule of Civil Procedure 37(a)(2), a motion for an order to a nonparty must be made in the court where the discovery is or will be taken. *United States ex rel. Ortiz v. Mount Sinai Hosp.*, 169 F. Supp. 3d 538, 543 (S.D.N.Y. 2016) ("[I]f a motion to compel is necessary, the motion must be made in the court for the district where compliance is required."). Here, the Subpoena provided that the deposition would take place at the offices of Ralph Fink & Associates

---

[3] FanDuel had previously served a subpoena on CG, along with a number of other Cantor entities in 2017. While FanDuel has requested that certain documents produced back in 2017 be stipulated to as business records in addition to the more recently produced documents, the 2017 subpoena is otherwise not at issue.

Inc., located at 39 West 37th Street, 6th Floor, New York, New York 10018, which is in the Southern District of New York and within 100 miles of CG's New York office located at 110 East 59th Street, New York, New York 10022.

        **B.**      **CG Should be Required to Respond to the Subpoena**

FanDuel's Subpoena was received by CG on August 21, 2019.[4] And that Subpoena was narrow in scope. It included just four topics that FanDuel was seeking documents and testimony about: (1) the authentication of the business records produced by CG Technology, L.P. or any affiliated entity; (2) the Cantor mobile gaming system, device, software, source code, middleware, firmware, or mobile application, including functionality, locations of installation and the relevant dates regarding the same; (3) Cantor's licensing practices regarding mobile gaming, including but not limited to technology agreements, licenses, or any other contracts or any other documents; and (4) valuations of Cantor's patent assets by Cantor or a third party on Cantor's behalf, including any audits or other valuation assessments.

While CG provided a laundry list of boilerplate objections (**Ex. G**, *CG Technology, L.P.'s Response to FanDuel's Subpoena*), CG nevertheless produced documents responsive to Topics 2 and 3 of the Subpoena on September 13, 2019, and again on September 17, 2019, and also confirmed that it had no documents responsive to Topic 4. And despite initially refusing to make the requested source code available for inspection, CG ultimately made its source code available for inspection and FanDuel inspected that source code on October 3-4 and again on October 17.

---

[4] FanDuel initially served its subpoena to CG on IG via email on August 5, who forwarded it to CG. While CG objected to FanDuel's method of service, CG provided its objections and responses to FanDuel's subpoena and produced responsive documents. Nonetheless, to effectuate proper service and resolve any lingering objections, FanDuel re-served its subpoena on CG's registered agent on September 20, 2019. **Ex. A**.

In light of these productions, FanDuel was willing to forego a deposition, as CG had requested, if CG would stipulate that the documents and source code it produced were business records and execute and affidavit attesting to the same. **Ex. H**, *10/15/19 Email from C. Brazen to S. Springer*. Despite having agreed to stipulate to the authenticity of the documents it produced, CG would not agree to execute a business records affidavit for its produced documents and source code. **Ex. I,** *10/16/19-10/18/19 Email Chain between C. Brazen and S. Springer*, at 4. In an attempt to alleviate CG's concerns, FanDuel narrowed the list of documents for which it was seeking execution of the business records affidavit and indicated that if CG would not execute the business records affidavit, FanDuel would move to enforce its subpoena. *Id*. at 3. But CG again refused and restated its position that a deposition was unnecessary. *Id*. at 1.

There is no just reason for CG's refusal to execute a business records affidavit for its own documents and source code or, in the alternative, to sit for a deposition to give FanDuel the opportunity to establish the admissibility of the produced documents and source code. The documents and source code produced by CG are highly relevant to the Underlying Action, as they relate to what FanDuel believes is an invalidating prior art system, and CG's deposition is necessary for FanDuel to establish the admissibility of those documents and source code for use in the Underlying Action. It is only because of CG's ongoing refusal to execute a business records affidavit that this deposition is necessary at all. Absent CG's agreement to execute a business records affidavit to that effect, FanDuel's only option is to seek the deposition of CG to establish the admissibility of these documents and source code at trial. Accordingly, FanDuel respectfully requests that the Court compel CG to sit for a deposition on Topics 1-3 of FanDuel's subpoena.

### C.      The Court Should Award FanDuel its Attorneys' Fees and Costs for Preparing this Motion

Under Rule 37(a)(5), FanDuel is entitled to recover its expenses, including attorneys' fees and costs, incurred as a result of filing this application. Where a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees." *See* Fed. R. Civ. P. 37(a)(5); *see also Anderson v. City of New York*, No. CV-06-5363 KAM/VVP, 2009 WL 3731973, at *1 (E.D.N.Y. Nov. 6, 2009) ("Any motion to compel compliance with a duly issued subpoena, if successful, would of course entitle the moving party to an award of attorneys' fees and costs in appropriate circumstances."). None of the three exceptions to an award of expenses in Rule 37(a)(5)(A) applies. Additionally, this Motion was necessitated on CG's unreasonable refusal to execute a business records affidavit for its own produced documents and source code. Given CG's conduct, the circumstances warrant an award of expenses.

### IV.      CONCLUSION

Based on the foregoing, FanDuel respectfully requests that its Motion be granted, that the Court award FanDuel its reasonable costs and attorneys' fees incurred in bringing this Motion, and that CG Technology, L.P. be ordered to sit for a deposition on Topics 1-3 set forth in FanDuel's subpoena. FanDuel requests such other and further relief, in law or in equity, to which it may be entitled.

6

Dated: New York, New York
      October 25, 2019

Respectfully Submitted,

ZWILLGEN PLLC

By: /s/ Jeffrey Landis
      Jeffrey Landis (JL0084)
      183 Madison Avenue, Suite 1504
      New York, New York 10016
      Tel: (202) 296-3585
      Facsimile: (202) 296-5298
      jeff@zwillgen.com

      *Attorneys for FanDuel, Inc.*